Dear General Stroud:
This is in response to your request for an opinion of this office regarding Operation GuardCare, a medical program intended to support the City of New Orleans Health Department with the underserved community. As we understand your request, approval of the Operation GuardCare Agreement is being delayed by the legal office in the National Guard Bureau until an opinion is rendered concerning the authority of the State to participate in the program.
You state that in the opinion of counsel for the National Guard Bureau, there are six items in the National Guard Bureau Medical Care Pilot Program Agreement No. DAHA1695-2-4006, Article XII — Legal Authority, Section 1202, (a) through (f), that require an opinion of this office. Each item pertains to the legal authority of the State to enter into the GuardCare Program.
Section 1202 of the National Guard Bureau Medical Care Pilot Program Agreement reads as follows:
Section 1202. Opinion of Counsel.
 Concurrent with its execution of this Agreement, the State shall furnish an opinion of counsel by the highest legal officer of the State, or his or her designee, that:
 a. The State has the requisite authority to enter into this Agreement;
 b. The State can make the warranty set forth in Section 1201;
 c. The State is empowered to assume the responsibilities and obligations the State proposes to undertake under this Agreement;
 d. The provisions of the Agreement intended to secure the interests of NGB are enforceable according to their terms;
 e. The execution of this Agreement has been duly authorized; and,
 f. That the individual signing this Agreement on behalf of the State has the requisite legal authority to bind and obligate the State.
This section is preceded by Section 1201 entitled, "Legal Authority", which provides a general warranty by the signatory state, as follows:
Section 1201. Legal Authority.
 The State represents and warrants that it is under no existing or foreseeable legal disability that would prevent or hinder it from fulfilling the terms and conditions of this Agreement. The State shall promptly notify NGB of any legal impediment that arises during the term of this Agreement that may prevent or hinder the State's fulfillment of its obligations under this Agreement.
Additionally, in the "Execution" paragraph of the Agreement, the Governor warrants that as a signatory party, the State of Louisiana does "agree to the terms and conditions contained" in the Agreement, including the Section 1201 warranty. Thus, it may be contended that the provisions of Section 1202(a) — (f) are unnecessary and duplicitous. Nonetheless, Section 1202 requires "an opinion of counsel by the highest legal officer of the State" as to the provisions of paragraphs (a) — (f) quoted above, even though the agreement is being signed by the Chief Executive Officer of the State, the Governor of the State himself, subject to the preceding Section 1201 warranty which is effective upon signing.
The Governor, as the chief executive officer of the State, pursuant to the provisions of Article IV, Section 5 (A) of the Louisiana Constitution, has full authority to enter into an agreement with the National Guard Bureau to provide assistance in medically underserved areas of the State.[1]
Additionally, the Governor is Commander-in-Chief of the armed forces of the state pursuant to Article IV, Section 5(J) of the Louisiana Constitution, and of the militia, as defined by federal law, 10 U.S.C. § 311, and state law, La. R.S. 29:1 et seq.[2]
Based upon our review of the GuardCare Agreement and applicable legal authorities, we conclude that the State of Louisiana is under no existing or foreseeable legal disability that would prevent or hinder it from fulfilling the terms of the Agreement entered with the National Guard Bureau to provide assistance to medically underserved areas within the State. Should any legal impediment arise during the terms of this Agreement which may prevent or hinder fulfillment of this Agreement, the State may take immediate action to inform the National Guard Bureau of this impediment.
We further conclude that the State of Louisiana is empowered by its Constitution and statutes to assume the responsibilities and obligations proposed to be undertaken by this Agreement and is bound by its terms.
It is therefore the opinion of this office that the execution of this Agreement is within the authority of the Governor who has the authority to bind the State of Louisiana to the terms of this Agreement.
We hope that this opinion is of assistance and ask that you contact us if we may be of further help.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK/bb
[1] The authority of the Governor as the Chief Executive Officer of the State makes his authority plenary in certain instances and his actions are not subject to limitation or control from the other branches of government. See U.S. v.State of La., 751 F. Supp. 608 (E.D. La. 1990), at 617, citing State of Louisiana ex rel Guste v. Texaco, Inc.,433 So.2d 756 (1st cir. 1983). See also Rapides GeneralHosp. v. Robinson, 488 So.2d 711 (1st cir. 1986); Bryantv. Louisiana State Pardon Board, 378 So.2d 180 (1st cir. 1979); and State v. Mehojovich, 44 So.2d 481 (1907).
[2] See Perpich v. Department of Defense, et al,110 Sup. Ct. 2418, 496 U.S. 334, 110 L.Ed.2d 312 (1990) for an historical account of the origin, development, and constitutional and statutory basis of the National Guard of the United States and its relationship to the U.S. Army, and the "militia", under the control of the Governors of the several states when not employed in service of the United States.